UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

| | |
|---|---|
| MOHAMAD ALKARORI,<br><br>                              Petitioner,<br><br>    v.<br><br>Nevada Southern Detention Center,<br><br>                              Respondent. | Case No. 2:25-cv-02567-MMD-MDC<br><br>ORDER |

## I.    SUMMARY

Petitioner Mohamad Alkarori, currently detained at the Nevada Southern Detention Center, filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1-1 ("Petition").) The Court screened the Petition, appointed counsel for Petitioner and set a briefing schedule. (ECF No. 3.) For the reasons discussed below, the Court grants the Petition.

## II.    BACKGROUND

Alkarori is a citizen of Sudan. (ECF No. 12-2 at 2.) He lawfully entered the United States as a refugee and later became a legal permanent resident. (*Id.*) In 2019, after being placed in removal proceedings, an Immigration Judge ("IJ") ordered Alkarori removed to Sudan but granted deferral of his removal in compliance with the Convention Against Torture. (*Id.* at 13.) The IJ concluded Alkarori's mental health disorder made it more likely than not that he would be detained and tortured in Sudan. (*Id.* at 12.) Alkarori was released from Immigration and Customs Enforcement (ICE) custody in February of 2020. On August 21, 2025, ICE took Alkarori back into custody. (ECF No. 12-1.) Respondents allege ICE advised Alkarori of their intent to remove him to South Sudan. (ECF No. 12 at 2.) According to Respondents, Alkarori expressed fear of being removed to South Sudan "but was willing to be removed to either Egypt or Eritrea." (*Id.*)

Alkarori filed this Petition *pro se* on December 22, 2025. (ECF No. 1-1.) The Court *sua sponte* appointed the Federal Public Defender of the District of Nevada to represent Alkarori in the interests of justice. (ECF No. 3 at 1.) Respondents filed a response (ECF No. 12) and Alkarori replied (ECF No. 16). The Court now address the merits of the Petition.

**III.     DISCUSSION**

Habeas corpus "is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The Constitution guarantees that a writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates they are in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

Respondents argues the Court lacks jurisdiction over this habeas action. (ECF No. 12 at 9-13.) The Immigration Nationality Act (INA) deprives courts of jurisdiction to hear any claim "arising from the decision to … execute removal orders." 8 U.S.C. § 1252(g). Respondents claim that because Alkarori is detained pending removal, he cannot raise a habeas challenge to the lawfulness of that detention. (ECF No. 12 at 9-10.) This argument is at odds with the Supreme Court's ruling in *Zadyvdas*, which allows for habeas relief from immigration detention even after a removal order. 533 U.S. at 687. Respondents' citations are unpersuasive. In *Rauda v. Jennings*, the Ninth Circuit concluded that courts lack jurisdiction to enjoin a non-final order of removal. *See* 55 F.4th 773, 778 (9th Cir. 2022). But here, Alkarori is "challeng[ing] the legality of his continued detention," not his final order of removal. (ECF No. 16 at 3). Respondents' heavy reliance on *Tazu v. Attorney General* is similarly unpersuasive. (ECF No. 12 at 10-13 (citing 975 F.3d 292, 297 (3d Cir. 2020)).) Alkarori is not challenging a "short re-detention for removal" of a few days – he has now been detained for over five months. *Tazu*, 975 F.3d at 297. In sum,

the Court finds it has jurisdiction over this habeas action under 28 U.S.C. § 2241.

Alkarori argues his continued detention violates the Due Process Clause of the Fifth Amendment.[1] Individuals with final removal orders are subject to mandatory detention for 90 days. *See* 8 U.S.C. § 1231(a)(2). While the Attorney General has discretion to detain noncitizens beyond this 90-day period, the Supreme Court found due process imposes an "implicit limitation" on that discretion. *See* 8 U.S.C. § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Indefinite detention "would raise a serious constitutional problem" under the Fifth Amendment. *Zadvydas*, 533 U.S. at 690. The Supreme Court reasoned it was "practically necessary to recognize some presumptively reasonable period of detention." *Id.* at 701. The Supreme Court adopted a six-month period "[f]or the sake of uniform administration in the federal courts" *Id.* After that six-month period, if a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Respondents argue Alkarori cannot seek relief under *Zadvydas* because he has not yet been detained for six months.[2] In *Zadvydas*, the Supreme Court adopted this six-month "presumption" to "guide lower court determinations." *Id.* The Court rejected a rigid application of this six-month period, reasoning that a detainee is not guaranteed release. *See id.* Correspondingly, the government is not guaranteed the right to hold a noncitizen for at least six months. See *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line... and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."). This six-month presumption may be rebutted where there is no significant likelihood of removal in the

---

[1]In his reply, Alkarori argues the Court has jurisdiction over this case in part because his continued deprivation is arbitrary and an abuse of discretion in violation of the Administrative Procedure Act ("APA"). (ECF No. 16 at 3-4 (citing 5 U.S.C. §§ 702, 703, 706(2)(A)).) Alkarori makes no further APA argument, therefore the Court only addresses his Due Process claim.

[2]The Court finds it highly relevant that Petitioner has now been detained approximately five and half months, just weeks away from reaching the six-month limit.

reasonably foreseeable future. *See Douglas v. Baker*, No. 25-CV-2243-ABA, 2025 WL 2997585, at *2 (D. Md. Oct. 24, 2025); *Munoz-Saucedo v. Pittman,* 789 F. Supp. 3d 387, 395-97 (D.N.J. 2025).

Here, Alkarori demonstrates there is no significant likelihood of removal in the reasonably foreseeable future and Respondents fail to respond with evidence sufficient to rebut that showing. Respondents do not dispute that Alkarori cannot be removed to his home country of Sudan as an IJ granted him deferral of removal, relief that remains in effect today. (ECF Nos. 12 at 2, 16 at 3.) Noncitizens like Alkarori facing removal[3] may designate one country where they would like to be removed and the Attorney General shall remove them there. *See* 8 U.S.C. § 1231(b)(2). If the Attorney General disregards that designation and the noncitizen cannot be removed to their country of previous residence or citizenship, the Attorney General shall remove the noncitizen to "another country whose government will accept" them. *Id.* at § 1231(b)(2)(E)(vii). Respondents claim Alkarori "expressed fear of being removed to South Sudan but was willing to be removed to either Egypt or Eritrea." (ECF No. 12 at 2.) Respondents provide no further evidence that Alkarori, who obtained relief from removal due to his severe mental illness (ECF No. 16 at 2), designated Egypt (or Eritrea) as his preferred country of removal. While Respondents claim that "on or about September 29, 2025, DHS/ICE began arrangements for the petitioner's travel to Egypt," Respondents provide no information regarding the status of this process over four months later. (ECF No. 12 at 2.) As Alkarori points out, Respondents provide no indication Egypt is willing to accept him, or even that they have initiated the process to obtain that approval. (ECF No. 16 at 9.) Respondents do not indicate any written or verbal notice of removal to Egypt was issued or served on Alkarori. Instead, Respondents merely reiterate conclusory statements that removal to Egypt is "imminent." (ECF No. 12 at 2, 11, 18.) But the factual allegation that "ICE is looking to

---

[3]Section 1321(b)(2) applies to any noncitizens ordered removed who are not "arriving at the United States." 8 U.S.C §§ 1321(b)(1), (2). Respondents seemingly concede that section 1321(b)(2) applies to Alkarori. (ECF No. 12 at 7-8 (citing 8 U.S.C. § 1321(b)(2)).)

remove this alien to a safe-third country, Egypt" without any further information or details after months of detention does not make removal reasonably foreseeable. (ECF No. 12 at 8); *see also Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4-5 (E.D. Cal. July 16, 2025) (declining to find the government's burden satisfied where Respondents rely on little more than generalized assertions that removal may occur at some undefined point in the future).

In sum, Alkarori effectively rebuts the presumptive reasonableness of his five and half months-long detention and Respondents fail to respond with any evidence that there is a significant likelihood of Alkarori's removal in the reasonably foreseeable future. Therefore, the Court finds Alkarori's continuing detention violates the Due Process Clause of the Fifth Amendment and that he is eligible for relief under *Zadvydas*.

IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Petition before the Court.

It is therefore ordered that Mohamad Alkarori's Petition (ECF No. 1-1) is granted. Respondents must immediately release Alkarori no later than 5:00 PM on Tuesday, February 3, 2026, subject to reasonable terms of supervision. *See* 8 U.S.C. §§ 1231(a)(6), (a)(3). Determining reasonable terms of supervision must not in any way impede the immediate release of Alkarori.

It is further ordered that the parties shall file a joint status report by Wednesday, February 4, 2026 confirming Respondents' compliance with this Order.

DATED THIS 2nd Day of February, 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

5